IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| KELLY D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Action No. 2:20cv546 |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Kelly D.'s ("Plaintiff") Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits under the Social Security Act. Plaintiff filed a Motion for Summary Judgment and Memorandum in Support, ECF Nos. 17, 18, and the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 19, 20. Plaintiff filed a Reply. ECF No. 21. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security. The Court thus substitutes Acting Commissioner Kilolo Kijakazi for former Commissioner Andrew Saul in this matter pursuant to Federal Rule of Civil Procedure 25(d).

without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On February 11, 2018, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging an onset date of August 31, 2015. R. at 58–59.[2] Plaintiff's application was initially denied on May 16, 2018, and denied again upon reconsideration on September 18, 2018. R. at 88, 96. On September 27, 2018, Plaintiff requested a hearing in front of an administrative law judge. R. at 99. A hearing was held on November 7, 2019, before Administrative Law Judge Edward L. Brady ("the ALJ"). R. at 34. Plaintiff appeared at the hearing with representation, and an impartial vocational expert ("VE") appeared and testified. R. at 34–57. On December 11, 2019, the ALJ issued a decision finding Plaintiff not disabled. R. at 12–27. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on September 2, 2020. R. at 1–6. The Appeals Council denied Plaintiff's request for review because the Appeals Council found no reason under the rules to review and amend the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. at 1–6.

Having exhausted her administrative remedies, on November 3, 2020, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. The Commissioner filed an Answer on March 4, 2021. ECF No. 12. The matter was referred to the undersigned U.S.

---

[2] "R." refers to the certified administrative record that was filed under seal on February 25, 2021, ECF No. 13, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Magistrate Judge ("the undersigned") on March 4, 2021.   ECF No. 14.   Following the summary

judgment briefing, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was forty-six years old at the time of her alleged disability onset date of August

31, 2015. R. at 58. At the date of the ALJ's decision, Plaintiff was 50 years old. R. at 58. Plaintiff

appeared with counsel at the ALJ administrative hearing on November 7, 2019. R. at 34. Both

Plaintiff and an impartial VE testified at the hearing. R. at 34–57. The Record included the

following factual background for the ALJ to review.

Plaintiff stated during the hearing that she currently lives in a house with her husband and

son. R. at 40–41. Plaintiff has a high school education. R. at 52–53. She has past work experience

as a patient account representative, which is also Plaintiff's last known job, at which she worked

until August of 2015. R. at 51–52, 41.

### A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments

Eight years prior to the alleged onset date of Plaintiff's disability, Plaintiff was diagnosed

with and treated for breast cancer by Dr. John Howard. R. at 74. Thereafter, Plaintiff returned to

work, working from home during chemotherapy treatment. R. at 50–51. During the relevant

period, Plaintiff's subsequent examinations concluded that she remained cancer-free. *See, e.g.*, R.

at 286, 531, 1399. Plaintiff continued to see oncologists for regular examinations. *See, e.g.*, R. at

800, 483.

Throughout the relevant period, Plaintiff also regularly visited her primary care physician,

Dr. Sarala Krishnagiri, alleging a series of pains and other complaints and undergoing regular

examinations. *See, e.g.*, R. at 965, 951, 953, 949, 941-942. In November 2014, Plaintiff

complained of left knee pain. R. at 965. The following year, Plaintiff complained of cough,

3

congestion, left foot pain, and abdominal pain. R. at 951, 953, 961, 949, 944. Examinations found no irregularities. *See, e.g.*, R. at 961.

In 2017, Plaintiff visited Dr. Krishnagiri for complaints of eyelid swelling, cough, skin lesions, and toe pain. R. at 926, 932, 935. Examinations concluded that her general condition was normal and Dr. Krishnagiri continued to treat her for hypertension. R. at 927, 933, 936.

In 2018, Plaintiff visited Dr. Krishnagiri five times, complaining in January of right knee pain and specifically worrying about her inability to work. R. at 919. An x-ray determined that there were minimal changes to her knee. R at 1008. Throughout 2018, Plaintiff complained of elbow pain, which was diagnosed as lateral epicondylitis; hot flashes; and ongoing back pain. R. at 917, 1176, 1436. In December 2018, her oncologist, Dr. Cynthia Sile, assessed that Plaintiff was "able to carry out work of a light or sedentary nature." R. at 1392.

In January 2019, Plaintiff complained that her back pain had worsened in the past months. R. at 1269. Upon examination, an orthopedist, Dr. Reeta Arora, found that there were no significant issues and the Plaintiff exhibited no distress. R. at 1273. In April, Plaintiff had no joint pain or sleeping difficulty complaints when examined by Dr. Krishnagiri. R. at 1422. Plaintiff visited an oncologist in June and August, where an assessment concluded that she had no issues and normal abilities. R. at 1324. A later visit to Dr. Krishnagiri in September 2019 produced a normal examination, as did one in October 2019 to address Plaintiff's complaint of joint and back pain. R. at 1418–19, 1414–15.

### B. Plaintiff's Medical Records Relevant to Alleged Mental Impairments

During the relevant period, Plaintiff also made frequent medical visits for concerns about her mental health. In 2016, Dr. Krishnagiri noted that Plaintiff was depressed after recently losing her grandmother, but thereafter Plaintiff did not complain of mental health concerns again until

the following year.  R. at 941–42.  In 2018, Plaintiff complained to Dr. Krishnagiri as well as oncologist Dr. Sile of depression and anxiety, citing her efforts to obtain disability benefits.  R. at 1176, 1397.  Following these complaints, Plaintiff began psychological treatment with Dr. Ann Mingione.  R. at 1250–51.

Plaintiff told Dr. Mingione in October 2018 that she had to stop working in 2015 because chemotherapy "slowed [her] brain," and an evaluation found that Plaintiff's mental ability was standard.  R. at 1252–53.  Plaintiff also addressed extended family issues with Dr. Mingione throughout 2018 and 2019, such as disputes with her mother-in-law, feelings of inattention from her husband, and blame from her sister-in-law for her son being "disturbed."  R. at 1356–58, 1367.  Dr. Mingione noted Plaintiff's anxiety, depression, chronic pain, and sleep issues regularly.  R. at 1367, 1369, 1371, 1373.

### C. Letters from Plaintiff's Providers

Plaintiff submitted letters from her oncologist, Dr. Howard; her clinical psychologist, Dr. Mingione; and her primary care physician, Dr. Krishnagiri in support of her disability.  Dr. Howard, who treated Plaintiff from 2007 until 2014, wrote similar letters in May 2018, November 2018, and October 2019, in which he stated that Plaintiff was cancer-free but maintained a significant risk of recurrence, which contributed to her anxiety and depression, as well as mirrored post-traumatic stress disorder symptoms.  R. at 1245, 1257, 1381.  The letters noted that Plaintiff was a "wreck" due to a "sequela of treatments" and assessed that she was significantly disabled.  R. at 1245, 1257, 1381.

Dr. Mingione, Plaintiff's clinical psychologist, wrote a letter in April 2019 which stated that Plaintiff had trouble with concentration, monetary stress, trauma from cancer treatment, "very

difficult" generalized anxiety, "moderate" depression, and hopelessness. R. at 1365–66. Dr. Mingione had been treating Plaintiff since October of 2018. *Id.*

Plaintiff's primary care physician, Dr. Krishnagiri, wrote a letter in May 2019 which concluded that Plaintiff "has difficulty doing daily activities" because of her pain and anxiety and lists various medical diagnoses and conditions Dr. Krishnagiri had addressed with her in the fourteen years she had treated Plaintiff, including chronic back pain, ongoing chest pain, and chronic insomnia. R. at 1425. Dr. Krishnagiri submitted another letter in July 2019 again stating that Plaintiff was "unable to work due to the Chronic pain." R. at 1421.

### D. Mental and Physical Evaluations Completed by State Agency Examiners

In May 2018, psychologist Dr. Jody Alperin evaluated Plaintiff at the request of the state agency. R. at 1240–42. Plaintiff recounted to Dr. Alperin her history of breast cancer and stated that she had last worked in 2015 because the company was bought out and she lost her job, and subsequently applied but was not hired for part-time work. R. at 1241. Plaintiff also reported that she was depressed, unmotivated, avoided social interaction, and had not participated in psychotherapy but had been prescribed psychotropic medications by her primary care physician. R. at 1240–41.

Dr. Alperin noted that, despite previous evaluations which concluded that Plaintiff did not have significant emotional problems, Plaintiff presented symptoms "consistent with a major depressive disorder" and which were "probably moderate." R. at 1242. Dr. Alperin assessed that Plaintiff could "complete basic daily activities as well as more complex ones," and was competent to manage her own funds. R. at 1242. Further, she assessed that Plaintiff could "complete simple and repetitive tasks, as well as detailed and complex tasks" though she might have moderate difficulty maintaining regular attendance. R. at 1242. Dr. Alperin concluded that Plaintiff would

6

not need additional supervision in the workplace and could accept instructions from supervisors, but her interactions with coworkers and the public should be limited to interactions not requiring significant face-to-face contact. R. at 1242.

Plaintiff's records were also evaluated by a state agency physician, Dr. Gene Godwin, who completed a function report in May 2018 which concluded that Plaintiff was not disabled. R. at 65–68. Dr. Godwin assessed that Plaintiff could do medium work and had a couple of postural limitations, such as being able to climb ramps/stairs or ladders only occasionally. R. at 66–67.

In May of 2018, state agency psychologist Dr. Joseph Leizer also reviewed Plaintiff's record and completed a psychiatric review technique form which concluded that Plaintiff displayed depression and body dysmorphia, but that she was not limited in her ability to function mentally or interact with others. R. at 63. Dr. Leizer found that Plaintiff had a mild limitation in her ability to adapt or manage herself and ultimately concluded that her mental impairment was "severe." R. at 63.

### E. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing on November 7, 2019, Plaintiff testified that she was living in a house with her husband and son. R. at 40–41. Plaintiff stated that she had not worked since her alleged onset date and felt "constant" pain in her back and neck that radiated to her knees. R. at 41–42. Plaintiff testified that she could only lift with her right arm and could lift no more than five pounds but did not have difficulties using her hands for fine motor activities. R. at 42–43. Plaintiff testified that she could not sit for more than ten minutes before needing to stand but standing caused "severe" pain after five or ten minutes, so she changed position constantly. R. at 43.

Plaintiff characterized her ability to walk without taking a break as comfortably being "from [her] car to [her] mailbox" and testified that she had not exercised within the last two years.

R. at 43–44. Plaintiff indicated that she was able to take care of herself but that she did not cook or do any household shopping because of the pain of walking. R. at 44. She testified that she got four hours of sleep or less per night and sometimes lied down during the day. R. at 44.

Regarding her mental health, Plaintiff testified that she saw her therapist, Dr. Mingione once a month but that her psychotropic medications were prescribed by someone else. R. at 45. She stated that the therapy and medication were helping a little bit but that she was still depressed all the time. R. at 46. Plaintiff testified that she did not feel like herself, felt worthless, and felt like she could not help anyone. R. at 46. Plaintiff further stated that she had not gone out socially in two or three years and had disconnected herself from social media. R. at 46–47. She stated that her anxiety stemmed from feelings of uselessness, and fear that her breast cancer would recur. R. at 47.

When questioned by her attorney, Plaintiff stated that she could multi-task before undergoing chemotherapy but could no longer multi-task and had to write things down in order to remember them. R. at 48. Plaintiff also testified that she ate only once a day at most and was concerned about being overweight. R. at 48. Prior to her cancer diagnosis, Plaintiff testified, she worked part-time and contributed to her family, but following chemotherapy, she began to stay home all the time. R. at 49. Her attorney reviewed her medical issues with her, and Plaintiff testified that she could not afford therapy for her sciatic nerve pain and experienced numbness in her chest from previous rib fractures. R. at 50.

Regarding her prior work experience, Plaintiff testified that before she stopped working, her part-time work-from-home job required her to "push" herself to be up at the hours her boss wanted her to work, and that when the company was bought out, she was not offered an interview or a job. R. at 51. A VE also testified at the hearing and identified that while a person with

Plaintiff's conditions could not perform her past work, appropriate unskilled jobs were sufficiently available in the national economy for a person with the proposed limitations. R. at 53–54.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920 (2020); *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner. *Mastro*, 270 F.3d at 177. It is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520 (2020)). Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law.

9

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 31, 2015. R. at 17. At step two, the ALJ found severe impairments of degenerative disc disease, status post breast cancer in complete remission, post-traumatic stress disorder (PTSD), generalized anxiety disorder, and depression. R. at 17. The ALJ concluded that these impairments were "severe" because they "significantly limit[ed] Plaintiff's] ability to perform basic work activities as required by SSR 85-28." R. at 17 (referencing SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 17–19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2020)).[3] Specifically, the ALJ found that Plaintiff's mental limitations did not satisfy "paragraph B" criteria because Plaintiff suffered only: a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting or managing oneself.[4] R. at 19–21. The ALJ determined that Plaintiff's medically determinable mental impairments caused no more than moderate limitations in all functional areas listed in "paragraph B."[5] R. at 19–21. Similarly, the ALJ opined that Plaintiff's mental impairments did not satisfy the "paragraph C" criteria as the Record did not

[3] The ALJ compared Plaintiff's mental impairments with the criteria of listings 12.04, 12.06, and 12.15. R. at 18.
[4] To satisfy "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) adapting or managing themselves. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2020). For this criterion, "a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings." *Id.*
[5] "Moderate limitation" means that Plaintiff's functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2020).

10

indicate the existence of a mental disorder over a period of two years of which Plaintiff could produce evidence of both "medical treatment, mental health therapy, psychosocial support(s), or a high structured setting(s) that is ongoing and that diminishes the symptoms . . . of the claimant's mental disorder" *and* "marginal adjustment." R. at 18–19.

In keeping with Plaintiff's impairment finding, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: "she requires a sit/stand option, she should have only occasional changes in workplace routine and setting, and she can have no more than occasional interaction with the public and no more than frequent interaction with coworkers or supervisors." R. at 21.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 163p." R. at 21. Plaintiff alleged disability "primarily due to chronic low back pain, knee pain, neck pain, a history of breast cancer, PTSD, depression, and anxiety." R. at 22. Plaintiff alleged the ability and desire to sometimes do some physical and social activities but also alleged being unable to sustain any type of full-time work since leaving her last job in 2015. R. at 22–23. The ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but "[her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 23.

The ALJ also considered the medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. R. at 24. The ALJ first considered Dr. Godwin's Statement from May 2018 and did not find his opinion persuasive. R. at 24. In the opinion, Dr.

11

Godwin stated that Plaintiff had the ability to do medium work. R. at 24. The ALJ found that because of Plaintiff's high body mass combined with degenerative changes in her spine, Plaintiff was suited to light work. R. at 24. The ALJ was inclined to agree with the findings of Dr. David Bristow, who evaluated Plaintiff's records at the reconsideration level of review in September 2018. R. at 24. Dr. Bristow assessed that Plaintiff was suited to light work due to her high body mass and history of breast cancer. R. at 24.

The ALJ next considered Dr. Alperin's mental status evaluation from May 2018 and found it persuasive. R. at 24–25. In the evaluation, Dr. Alperin stated that Plaintiff could "complete simple and repetitive tasks, as well as detailed and complex tasks" and may have moderate difficulty with workplace attendance. R. at 24. Furthermore, Dr. Alperin opined that Plaintiff would not need additional supervision, could accept instructions from supervisors, and would likely have no issues with coworkers if the interactions were not face-to-face. R. at 24. The ALJ concluded that the opinion was "supported by her mental status examination of the claimant" and "largely within normal limits." R. at 25.

Lastly, the ALJ considered the opinions of Dr. Joseph Leizer and Dr. Alan Entin, who were asked to review the claimant's record at the request of the state agency. The ALJ found that the opinions of the state agency psychological consultants were not persuasive. R. at 25. The ALJ stated that the opinions "cite largely normal mental status examination findings and a lack of mental health treatment in support" which is "inconsistent with records." R. at 25.

At steps four and five, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a patient account clerk, which is considered skilled, sedentary work. R. at 25. The ALJ noted that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported the finding that the claimant was not

disabled regardless of any transferable job skills.  R. at 25.  Accordingly, while finding that Plaintiff could not resume her prior employment, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  R. at 26.   Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, August 31, 2015, through the date of his decision, December 11, 2019.  R. at 26–27.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589).  The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Accordingly, if the Commissioner's denial

of benefits is supported by substantial evidence and applies the correct legal standard, the Court

must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. **ANALYSIS**

On appeal, Plaintiff argues that both Dr. Howard and Dr. Krishnagiri rendered medical

opinions under the regulations, and accordingly, the ALJ erred by not evaluating their letters. ECF

No. 18 at 2. The Commissioner argues that the doctors' letters did not constitute medical opinions

and therefore the ALJ was not required to discuss them. ECF No. 20 at 17. Further, even if

considered as medical opinions, the Commissioner contends that the letters did not provide

inherently valuable or persuasive evidence in accordance with 20 C.F.R. 404.1520b(c) and that the

letters would not support or further the limitations the ALJ implemented under medical evidence

from other sources. ECF No. 20 at 21–22.

Under the Social Security Administration regulations, the ALJ must consider each medical

opinion in the record. § 416.920c ("[W]hen a medical source provides multiple medical opinion(s)

. . . we will articulate how we considered the medical opinions . . . from that medical source

together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this

section, as appropriate."). Under the new SSA regulations promulgated in March 2017, a medical

opinion is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do
> despite your impairment(s) and whether you have one or more impairment-related
> limitations or restrictions in the [following] abilities . . .
>
> (A) Your ability to perform physical demands of work activities, such as sitting,
> standing, walking, lifting, carrying, pushing, pulling, or other physical functions
> (including manipulative or postural functions, such as reaching, handling, stooping,
> or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as
> understanding; remembering; maintaining concentration, persistence, or pace;

carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).  Statements that reflect a judgment about the nature and severity of an impairment are not "medical opinions" but instead are considered "other medical evidence." 20 C.F.R. § 404.1513(a)(3).

### A. The ALJ Did Not Err By Failing To Analyze Dr. Howard's Letters.

Plaintiff argues that the ALJ erred by omitting analyses of letters rendered by Dr. Howard because they met the requirements of medical opinions. ECF No. 18 at 5–6.  Plaintiff specifically contends that the statements of Dr. Howard prove that there is no substantial evidence to support the ALJ's decision that Plaintiff can perform work and that she is legally disabled. *Id.* at 5–8.

In response, the Commissioner contends that Dr. Howard's letters are not medical opinions under the plain language of 20 C.F.R. § 404.1513(a)(2) because they do not describe what Plaintiff may still do despite her impairments nor whether she has impairment-related limitations. ECF No. 20 at 20–23.  The Commissioner further argues that even if Dr. Howard's statement that Plaintiff "had trouble with simple activities and concentration" constituted a medical opinion, the ALJ considered it as other evidence and found it neither valuable nor persuasive. ECF No. 20 at 21 (citing R. at 25).

Dr. Howard is an oncologist who treated Plaintiff for breast cancer for seven years between 2007 and 2014. ECF No. 18 at 6.  Since 2014, Plaintiff has not been examined by Dr. Howard. *Id.*  He wrote three letters dated May 29, 2018, November 15, 2018, and October 3, 2019; all three contained the same information.  R. at 1245, 1257, 1381.  In the letters, Dr. Howard stated that

15

Plaintiff appears to be cancer-free with a risk of recurrence; Plaintiff is a "wreck" due to her treatments; Plaintiff "has trouble with simple activities and concentration;" and Plaintiff's condition shows elements of PTSD. R. at 1245, 1257, 1381.

The only statement in Dr. Howard's letters which could possibly be construed as a medical opinion is Dr. Howard's observation that Plaintiff has trouble with simple activities and concentration. All other statements constitute "other medical evidence" under the regulations. However, Dr. Howard's statement that Plaintiff "has trouble" is vague and conclusory and does not explain how Plaintiff's impairments would affect her ability to perform the mental demands of work activities. R. at 1257.

Accordingly, the ALJ did not err by declining to specifically evaluate Dr. Howard's letters.

**B. The ALJ Did Not Err By Failing To Analyze Dr. Krishnagiri's Letters.**

Plaintiff further argues that the ALJ erred by omitting analyses of letters rendered by Dr. Krishnagiri because they constituted medical opinions. ECF No. 18 at 5–6. Plaintiff specifically contends that statements by Dr. Krishnagiri prove that no substantial evidence exists to support the ALJ's decision that she can perform work and that she is legally disabled. *Id.* at 5–8.

In response, the Commissioner contends that Dr. Krishnagiri's letters are not medical opinions under the plain language of 20 C.F.R. § 404.1513(a)(2) because they do not specifically describe what Plaintiff may still do despite her impairments nor whether she has impairment-related limitations. ECF No. 20 at 23–26.

Dr. Krishnagiri is Plaintiff's primary care physician who has treated her since 2009 and who continued to treat her at the time of the ALJ hearing. ECF No. 18 at 7; *see* R. at 1045, 1414. Dr. Krishnagiri supplied two letters. The first letter, dated May 24, 2019, describes Plaintiff's history of breast cancer, anxiety, hypothyroidism, and chronic pain and concludes that Plaintiff "has difficulty doing daily activities due to pain and severe [a]nxiety." R. at 1425. The second

letter from July 25, 2019, reiterates Plaintiff's diagnoses and states that "[s]he is unable to work due to the [c]hronic pain." R. at 1421.

Neither statement from Dr. Krishnagiri is a medical opinion. Dr. Krishnagiri's conclusions do not identify what Plaintiff can still do despite her impairments or specific work activities that Plaintiff cannot perform because of her pain or anxiety. General difficulty with "daily activities" or "work" is not enough to support a finding of Dr. Krishnagiri's letters as medical opinions, since the descriptions are vague and conclusory. Moreover, whether a claimant can "work" is a judgment left to the Commissioner, not a medical opinion. 20 C.F.R. § 404.1545(a)(3).

Accordingly, the ALJ did not err by declining to specifically analyze Dr. Krishnagiri's letters.

### C. Even If Dr. Howard and Dr. Krishnagiri's Letters Constituted Medical Opinions, There Is No Evidence That The ALJ's RFC Determination Would Have Been Different Had The ALJ Articulated Their Persuasiveness.

Plaintiff argues that Dr. Howard and Dr. Krishnagiri's letters both constitute "medical opinions," and in failing to specifically analyze them, the ALJ erred. ECF No. 18 at 5–6. The Commissioner contends that Dr. Krishnagiri's letters do not comprise a medical opinion at all. ECF No. 20 at 23–24. However, the Commissioner asserts that even if Dr. Howard's statement could be read as a medical opinion, remand is unnecessary for two reasons: first, the ALJ stated that he did not articulate evidence that he found neither valuable or persuasive, and second, the ALJ considered the Plaintiff's alleged mental impairments when imposing work limitations, which would not be furthered by Dr. Howard's letters. ECF No. 20 at 21–22. As medical opinions or "other evidence," neither letter would alter the ALJ's findings under the greater weight of evidence articulated by the ALJ.

Even as "other medical evidence" under 20 C.F.R. § 404.1513(a)(3), Dr. Howard and Dr. Krishnagiri's letters are conclusory and inconsistent with the greater weight of the evidence relied

on by the ALJ.  Among findings that the ALJ detailed as inconsistent with Dr. Howard and Dr. Krishnagiri's letters were that Plaintiff indicated an ability to do daily living tasks; Plaintiff had "largely normal" results from physical and mental evaluations; and, the evaluation from Dr. Bristow supported the ALJ's finding of "light work" R. at 23–24.  The ALJ found Dr. Bristow's evaluation persuasive because, for example, Dr. Bristow's opinion that "the claimant's high body mass index and history of breast cancer" supported a light work designation is "more consistent with the overall record . . . [when] considered in combination." R. at 24.  The ALJ considered the entirety of relevant evidence, including Plaintiff's complaints, medical records, and medical imaging in imposing a "light work" limitation on Plaintiff's future work, and Dr. Howard and Dr. Krishnagiri's letters would not support a more restrictive finding.  *See* R. at 23–24.

The ALJ's RFC determination pronounced that Plaintiff's conditions endorsed "limiting the claimant to the range of light work" based on the physical and mental health concerns supported by articulated evidence. R. at 23.  The ALJ described Plaintiff's "abnormalities," such as sacroiliac joint tenderness and "slightly decreased motor strength," and explained that these, "combined with mild degenerative changes of the lumbar spine and the claimant's reports of chronic fatigue following aggressive treatment for breast cancer" constitute a basis for "a restriction to light work." R. at 23.  However, the ALJ noted that Plaintiff's physical examinations "reveal[] largely normal findings, including normal motor strength and tone, normal gait, normal range of motion, and intact sensation," and therefore greater restrictions were unsupported by the overall record. R. at 23.

The ALJ further detailed Plaintiff's mental health concerns, stating that her problems with concentration, depression, and anxiety sufficiently supported limitations of only occasional changes in her workplace environment and no more than frequent interaction with coworkers or

supervisors. R. at 23. The ALJ found that "findings upon mental status examination are otherwise largely within normal limits," and Plaintiff reported an ability to do "a range of activities of daily living," so greater restrictions were "inconsistent with the overall record." R. at 23–24.

Likewise, harmless error exists if Dr. Howard's letters constituted medical opinions because the result would not have been different had the ALJ articulated the persuasiveness of the letters. Even if Dr. Howard's statement that Plaintiff has difficulty performing simple tasks and concentrating is a medical opinion under the regulations, any error by the ALJ in failing to specifically evaluate this statement is a harmless error. Harmless errors are defined as those which, when considering the "likelihood that the result may have been different," did not substantively prejudice a party. *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009); *see Lee v. Colvin*, No. 2:16-cv-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). An error may be considered harmless when a court can "conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant." *Kimberly L. v. Kijakazi*, No. 1:20-cv-536, 2021 WL 4434323 at *13 (E.D. Va. Sep. 9, 2021) (citing *Lee*, 2016 WL 7404722, at *8).

In the instant case, even if the ALJ had specifically evaluated Dr. Howard's statement that Plaintiff "has trouble with . . . concentration," there is no evidence that the result would have been different. For example, at step three, the ALJ determined that Plaintiff has moderate difficulty in concentrating, persisting, and maintaining pace based on Dr. Alperin's 2018 mental status evaluation of Plaintiff. R. at 20 (citing R. at 1241–42). The ALJ's finding of the same difficulty cited by Dr. Howard in his letters demonstrates that Dr. Howard's letters, if considered medical opinions, would not have changed the ALJ's determination that claimant's work must be limited to the range of light work. R. at 23.

19

Accordingly, even if the ALJ erred in failing to consider Dr. Howard and Dr. Krishnagiri's letters as "medical opinions," any error was harmless, and remand is not warranted on this ground.

For all the reasons stated above, the Court **FINDS** that the ALJ did not err by omitting a specific analysis of Dr. Howard and Dr. Krishnagiri's letters because they are not medical opinions under the regulation, and therefore substantial evidence supports the Commissioner's findings.

## VI.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

20

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 12, 2021

21